JOHN W. CONKLIN and others *vs.* ELI BARTON, Jun.
impleaded with Hiland H. Barton.

A participation in the profits of a business, by a party, as a compensation for his labor or services, without his having an interest in the principal stock, or in the profits as such, or any right to control the business, does not make him a partner.

He must have an interest in the stock, with a right to control, and thus have a right to the profits as the result of the capital and industry in which all concerned are interested, and not as a measure of compensation merely; and must be liable for losses.

An objection for a defect of parties—such as the non-joinder of a person as plaintiff—which is not apparent upon the face of the complaint, can only be taken by answer.

If the objection is not thus taken the defendant will be held to have waived it.

Where an individual, though not actually a partner of, or connected in business with, another, by his acts and declarations holds himself out to a third person as a partner, and induces him to believe that he is such, and thereby goods are obtained on the credit of both, he will be estopped from denying the existence of a partnership, and will be liable as a partner.

What acts and declarations of an individual will amount to a holding of himself out to others as a partner.

After a witness has stated what he has seen and heard which tended to establish the existence of a copartnership, it is competent to prove by him, negatively, that he has no knowledge or information to the contrary.

Where individuals are sued as partners, for goods sold to them in their business as hotel keepers, and the partnership is denied, a bond, purporting to have been executed by both defendants for the purpose of obtaining a tavern keeper's license, is admissible in evidence as tending to establish a partnership.

APPEAL from a judgment entered upon the report of a referee.

The action was brought against the defendants to recover the balance of an account for liquors, alleged to have been sold and delivered by the plaintiffs to the defendants between the 29th of March and the second day of December, 1862. The defendant Eli Barton, jun. alone defended, claiming that he was not a partner of Hiland H. Barton, and that the liquors were sold to Hiland H. Barton alone. The cause was referred to Hugh W. McClellan, Esq. as sole referee.

Upon the trial it appeared, among other things, that Hiland

Conklin *v.* Barton.

H. Barton kept the hotel at Eagle Bridge, and that the defendant Eli Barton, jun. kept a store in the immediate vicinity; and that the plaintiff's agent, Henry A. Backman, was acquainted with both parties, and went there to sell liquors in consequence of his having heard that the defendants were in partnership.

The questions raised upon the trial appear in the opinion of the court, and the facts, so far as material and which are not hereafter stated in the referee's findings, are therein adverted to.

The cause was submitted to the referee, who reported in favor of the plaintiffs. In deciding said action the referee found the following facts, that is to say:

*First.* That the plaintiffs are partners in business, and as such, between the 29th of March, 1862, and the 2d day of December, 1862, inclusive, they sold and delivered to the defendants, and at their request, wines and liquors to the value of four hundred and eighty-three dollars and eighty-one cents.

*Second.* That Hiland H. Barton, on the 4th day of November, 1862, paid the balance for all wines and liquors sold up to and including the 5th day of July, 1862, and that since that time the same defendant has paid upon the balance of said account the sum of fifty dollars.

*Third.* That the said Hiland H. Barton and Eli Barton, jun. were not at the time of the purchases of said liquors, partners, nor connected in business between themselves, but that they and each of them, and especially the defendant Eli Barton, jun. held themselves out to the plaintiffs as partners, and from this holding out, and by their acts and conversation, and from the facts and circumstances as appearing in evidence, they induced the plaintiffs to believe, and the plaintiffs did believe the said defendants to be partners and connected in the business for which said purchases were made, and thereby procured the credit for such purchases, and that the plaintiffs in making such sales relied upon the

Conklin *v.* Barton.

belief that they were such partners, and so connected in business.

*Fourth.* That the balance unpaid of such purchases is the sum of two hundred and fifty dollars and forty-eight cents.

The appellants' counsel proposed to the referee upon the settlement of the case, to find the following facts:

"*Fifth.* That the defendant Eli Barton, jun. was not interested in said purchases, and never had or received any portion of said wines or liquors, or the avails or proceeds thereof.

*Sixth.* That Hiland H. Barton was sole proprietor of the Eagle Bridge hotel, and *made all the purchases* of the plaintiffs, and for his sole use and benefit."

Which the referee declined to do. To which ruling the counsel for the appellant separately excepted. And as a conclusion of law from the foregoing facts, the referee also found that the defendants in this action did owe the plaintiffs the sum of two hundred and fifty dollars and forty-eight cents, and that the plaintiffs were entitled to judgment for that sum, besides costs. Within the time prescribed by law, the counsel for the defendant Eli Barton, jun. made and filed exceptions to the report and decision of the referee, in due form. A judgment was duly entered in favor of the plaintiffs, upon the referee's report, and the defendant Eli Barton, jun. appealed to the general term of the supreme court.

*R. A. Parmenter,* for the appellants.

*I. Shaver,* for the respondents.

MILLER, J. The questions arising upon this appeal appear to be the following: 1. Whether Backman was a partner of the plaintiffs and a necessary party plaintiff in the action. 2. Whether there was sufficient evidence to support a judgment against Eli Barton, jun. 3. Whether the referee erred in allowing the following question to be put to the witness Back-

man : Did you ever see or hear any thing, about this hotel, or from the defendants, that they were not partners, in 1862, in the hotel business ? 4. Whether the referee erred in ad-mitting in evidence the bond for a tavern keeper's license. 5. Whether the referee erred in the settlement of the case, in rejecting certain findings proposed by the defendant.

1. Although Backman was interested in the profits of the concern he had, I think, no such interest as made him a part-ner. A participation in the profits of a business by a party as a compensation for his labor or services, without having an interest in the principal stock,.or in the profits as such, or any right to control the business, does not make him a partner. Something more is essential. He must have an interest in the stock, with a right to control, and thus have a right to the profits as the result of the capital and industry in which all concerned are interested, and not as a measure of compensation merely ; and must be liable for losses. (*Ogden* v. *Astor*, 4 *Sandf.* 311. *Burckle* v. *Eckhart*, 3 *Comst.* 132. *Collyer on Part.* §§ 25, 45, *and notes*, 3*d Am. ed. Story on Part.* § 30.)

There is also another answer to this objection which, in my judgment, effectually disposes of it. The objection being for a defect of parties—the non-joinder of Backman as a plaintiff—and not being apparent upon the face of the com-plaint, it could only be taken by answer. (*Code*, §§ 144, 147.) As it was not thus interposed, the defendant must be held to have waived the objection. (*Code*, § 148. *Zabris-kie* v. *Smith*, 3 *Kern.* 336. *Scrantom* v. *The Farmers and Mechanics' Bank of Rochester*, 33 *Barb.* 527. *Abbe* v. *Clark*, 31 *id.* 238.)

2. The evidence upon the trial does not establish that Eli Barton, jun. was actually a partner of his brother, and the plaintiffs' right to recover in this action can not be sustained upon that ground. It is based, however, upon the fact that the defendant Eli Barton, jun. by his acts and conduct held himself out as a partner, inducing the plaintiffs to believe that

he was such partner, and thereby procured the credit for the sales made by the plaintiffs. Does the evidence establish that he did thus hold himself out to the plaintiffs, or their agent, or to the world as a partner of his brother, so that he is now estopped from availing himself of a different state of facts? If it does, then he is liable. The plaintiffs rely upon several circumstances to establish the important fact that Eli assented to the proposition that he and his brother were copartners in the hotel business.

The defendant Eli Barton, jun. lived at the hotel with his family, assisting his brother in and about the business, in a manner which might well convey an impression to ordinary observers, who had no knowledge of the facts, that he was one of the proprietors. His store was in the immediate vicinity, and there was no sign or other external indication to show who was the actual proprietor of the hotel. At one time, when called upon by the plaintiffs' agent, and according to his testimony, Eli was asked how are you getting along, or how are you doing, and he replied we are doing well; think we are making money; thus making no distinction between his own and his brother's business. On another occasion, when spoken to by the agent about some Bourbon whisky which had been ordered by Hiland, his brother, Ely remarked we are out of Bourbon, and I guess you had better send it up. Upon being being asked how he should mark it, Ely replied, mark it to Hiland, as he did not want the accounts mixed up, and to the effect that he did not wish the hotel and store accounts together. Eli does not positively contradict this testimony, but swears that he does not recollect some of the material portions of these conversations. Under the circumstances existing, the declarations alleged to have been made by Eli may well have created an impression on the mind of the plaintiffs' agent that he was one of the proprietors of the hotel, and have induced him to give the credit for the goods. He certainly spoke, if the witness is to be credited, as if there

was a business connection between him and his brother, and as if he had an interest in the hotel.

The evidence also shows that in July, 1862, a tavern bond was signed by Hiland in the joint name of both, and that the agent, in the latter part of the summer or the early part of the same fall, saw what purported to be a printed list of persons to whom licenses had been granted in the county of Rensselaer, on which were the names of the defendants connected together as keepers of the hotel. It appears that Hiland signed the bond without the knowledge of his brother at the time, for the purpose of including his brother's store in the same license, which was issued to both of them, and Hiland swears that he informed him of it, about the time it was done. There is some testimony to show that Eli ratified and approved it, although he had not authorized it to be done; but the evidence is somewhat conflicting as to Eli's immediate knowledge of the transaction. The plaintiffs' agent, although he had heard before the first credit was given that the defendants were partners, had no knowledge of this bond and license when the trade first commenced, and would not, therefore, originally have relied upon it in crediting the goods.

Although Hiland was in fact sole proprietor of the hotel and the goods were charged to him, (as the plaintiffs claim by the direction of both parties,) and there was no direct admission by either of them that they were copartners, yet it must be confessed there was much in the surrounding circumstances of the case and in the declarations made by Eli, to warrant a conviction that he was an actual partner. If Eli gave countenance to this impression, and his conduct and acts induced such a belief, then he would be liable. (2 *Geenl. Ev.* § 483.) He had no right to give encouragement to persons dealing with his brother, that he was a partner, without becoming liable. When called upon by the plaintiffs' agent, his plain duty was to speak and to state fairly and honestly how the facts were. Instead of employing the language he

Conklin *v.* Barton.

did, if he desired to exonerate himself from responsibility, he should have said, with frankness, that he was not a partner, and have repudiated the idea that he had any connection with his brother's business. If he was aware of the fact, he should not have permitted his name to be used in the bond and in the license. He should have discountenanced it at once; and if these circumstances had any influence in procuring any portion of the credit they can not, I think, be entirely overlooked or disregarded. There was certainly some evidence before the referee, showing that Eli made declarations giving countenance to the theory that he was a partner of his brother; and I am inclined to the opinion that so far as the plaintiffs are concerned, he is now estopped from denying that fact. Whatever may be urged as to the weight of the testimony upon that point, there is no such preponderance, the other way, as would authorize this court to disregard the conclusion at which the referee has arrived upon that subject. I think there is sufficient evidence to sustain the judgment, and that the referee properly refused to nonsuit the plaintiffs.

3. I think that the question put to the witness Backman, in reference to what he had seen or heard about the hotel, or from the defendants, to the effect that they were not partners, was a proper one. The witness had previously stated what he had seen and heard, which tended to establish the copartnership; and it was, in my judgment, competent to prove negatively that he had no knowledge or information to the contrary. The object of the testimony introduced was to prove that the plaintiffs relied upon what they had heard, and what had been witnessed by their agent as to the acts of the defendants, and it materially strengthened that evidence, by showing that nothing different had transpired and come to their knowledge. It tended to show that they trusted to the information thus received, without being in the possession of any facts which conflicted in any way with what had already been proven. If they had heard from the

defendants or others that they were not partners, or if they had any knowlege of acts done by them or others to the contrary, it would at least have seriously weakened if not entirely destroyed the plaintiffs' case. The question is whether the plaintiffs gave the credit upon the facts introduced in evidence. In such a case, where the party claims to recover, I think it was competent to rebut any presumption to the contrary by proof that he had no other knowledge or information.

4. The bond was properly introduced in evidence. It was offered for the purpose of showing an act of the defendants which tended to establish that they were connected in business. On its face, it appeared to be signed by both of the defendants, and although it was proven that only one of them had executed it, and that he did so without the knowledge of the other at the time, yet it was claimed that the other had subsequently approved and ratified the act, thus assenting to the fact alleged, that he was at the time a partner. Even if the bond was executed some time after the account began to run and the plaintiffs had not originally relied upon it, yet if the fact was that it was the act of both parties, it aided in establishing that the defendants had been partners in the hotel business, anterior to its execution. At any rate, if the execution of the bond was sanctioned by both of the defendants, and the plaintiffs relied upon it from the time that it came to their knowledge, that fact was calculated to prove that the defendants were both liable for the articles delivered subsequent to that period.

5. The only remaining question is whether the referee erred in refusing to find as requested. The proposition to find that Eli Barton, jun. was not interested in the purchases and never had or received any portion of the liquors, or the avails of them, I think is substantially covered by the finding of the referee that the defendants were not, at the time of the purchases of the liquors, partners nor connected in business between themselves; but that they and each of them, especially Eli, held themselves out to the plaintiffs as

Conklin *v.* Barton.

partners, and from this, by their acts and conversations, &c. induced the plaintiffs to believe them to be partners and thereby procured the credit. If this finding was justified, as would appear to be the case, then the defendants were not interested as partners in fact; but in law the sales made were to both defendants; Eli being interested in the purchases and the finding as proposed could not be, strictly speaking, accurate or consistent with the conclusion of the referee, which there was sufficient evidence to warrant.

In regard to the proposition to find that Hiland B. Barton was sole proprietor of the Eagle Bridge hotel, and made all the purchases of the plaintiffs for his sole use and benefit, it may be observed that it was mainly embraced in the findings already had. It was also objectionable because it embraced the proposition that Hiland had made all the purchases, when there was some evidence to show that on one occasion Eli had ordered goods, and I think that no error was committed by the referee in refusing to find as requested; and the result of these remarks is that the judgment entered upon the report of the referee should be affirmed.

INGALLS, J. concurred.

PECKHAM, J. dissented.

Judgment affirmed.

[ALBANY GENERAL TERM, December 5, 1864. *Peckham, Miller* and *Ingalls* Justices.]