GEORGE C. CARPENTER AND HENRY M. CARPENTER, RESPONDENTS, *v.* GERMAN–AMERICAN INSURANCE COMPANY OF NEW YORK, APPELLANT.

*Policy of insurance — failure to furnish proofs of loss — failure to prove title in the assured at the date of the policy.*

In an action, brought to recover for a loss sustained by the burning of a steam mill, which was insured by the defendant, a defense was interposed to the effect that the plaintiffs had violated a condition of the policy in respect to rendering proofs of loss. The language of the policy in that respect was that "in case of loss the assured shall give immediate notice thereof, and shall render to the company a particular account of said loss, under oath, stating," etc. (Here followed a specification of the facts required to be stated in what are commonly called the preliminary proofs of loss.)

It appeared upon the trial that an immediate notice of the loss was given, but that no proofs of loss were furnished until about six months after the loss occurred.

*Held*, that, as the stipulation in respect to furnishing proofs of loss was not made a condition of the policy, the delay in rendering these proofs did not of itself work a forfeiture of the policy or preclude a recovery by the plaintiffs.

One of the conditions of the policy was that the assured were, at the date of the insurance, the sole, absolute and unconditional owners of the property insured. The proofs and admission of the plaintiffs showed that, at the date when the insurance was effected, the plaintiffs had no legal title to the property insured, but held it under a contract of sale executed by the National State Bank of Elizabeth, N. J., the party of the first part thereto, by which it agreed to sell and convey the premises to the plaintiff George C. Carpenter on or before December 6, 1882. On the contract there was indorsed a transfer from George. C. Carpenter to Henry M. Carpenter of an undivided half of the premises.

The jury found that the plaintiffs had, at or before the time of the issuance of the policy to them, informed the agent of the defendant, who countersigned and issued the policy, " that they held the mill and premises on which it was situated by contract for purchase and not by deed."

The evidence given by the plaintiff on the trial showed that the plaintiffs had a contract from the Bank of Elizabeth, but that the title of the property was in one John Kean.

*Held*, that the plaintiffs, having failed to show that, at the time of the issuance of the policy, they held an equitable title by virtue of a contract of sale from the owner of the property, as, in substance, the jury found they informed the defendant's agent, they could not recover.

Appeal from a judgment in favor of the plaintiffs, rendered at the Erie Circuit, which was entered in the office of the clerk of Erie county on the 24th day of July, 1888; also from an order of a. Special Term, dated July 11, 1888, denying a motion for a new trial on a case and exceptions, which was entered in the said clerk's office on July 11, 1888.

*M. W. Cooke*, for the appellant.

*George Wadsworth*, for the respondents.

Dwight, J. :

This action was on a fire policy for the loss of a steam saw-mill in McKean county, Pa. Several defenses were set up by the answer, only two of which are insisted upon on this appeal, viz.: 1st. That the plaintiffs have violated the condition of the policy in respect to rendering proofs of loss. 2d. That the plaintiffs had no insurable interest in the property at the time of effecting the insurance.

The omission to render proofs of loss, until about six months after the loss was incurred, is admitted. The language of the policy in that respect is as follows : " In case of loss the assured shall give immediate notice thereof, and shall render to the company a particular account of said loss, under oath, stating," etc. Here follows a specification of the facts required to be stated, in what are commonly called the preliminary proofs of loss, and the requirement of a certificate of a magistrate or other specified official, in support of such statement. The immediate notice of the loss was given and acknowledged. No time being fixed within which the preliminary proofs should be rendered, the contract will be construed to intend a reasonable time ; and there was nothing in the case which would have justified the court in holding that the delay of six months was reasonable. But what was the effect of failure on the part of the plaintiff to perform this stipulation of the contract ? None is specified in the policy. Peformance of the stipulation is not, in terms, made a condition of liability on the part of the defendant, nor is a forfeiture of the policy attached to that stipulation as a penalty for its non-performance. The undertaking of the defendant is expressed to be " in consideration of the receipt of fifty dollars."

But there are in the contract a score of expressed conditions upon the existence or non-existence of which the validity of the policy or the liability of the defendant are made to depend. Thus, if the assured make an erroneous representation in an application ; if he omit to make known any fact pertaining to the risk ; if there be any other insurance ; if the risk be increased ; if the assured be adjudged a bankrupt ; if any change take place in the title (whether voluntary or otherwise) ; if the policy be assigned ; if the assured is not the sole, absolute and unconditional owner of the property insured ; if gunpowder or any one of many other things be kept or used on the premises ; if the mill be run over hours or lie still for more than ten days, and upon many other expressed conditions existing previous to loss, the policy shall be void. So, too, after loss, no recovery shall be had on this policy beyond the actual damage to the property or its cash value if totally destroyed, to be determined by appraisal, if not agreed upon. A refusal to answer questions on an examination under oath, to which the assured may be required to submit, or to subscribe his evidence taken on such examination,

-or any fraud or attempt at fraud, or false swearing on the part of the assured, shall cause a forfeiture of all claim under this policy.

Finally, at the close of the contract, occurs the provision : " This policy is made and accepted on the above expressed conditions." This language may, we think, with propriety be held to refer to those provisions of the policy, of which illustrations have been given, which are expressly made conditions of its validity, or of liability on the part of the insurer, or of the limitation of such liability. The stipulation in respect to rendering proofs of loss is not made ·one of those conditions, and we think the delay in rendering those proofs did not of itself necessarily work a forfeiture of the policy ·or preclude a recovery by the plaintiffs.

The other question is possibly one of more difficulty. It is made by the contract one of the conditions of the validity of the policy that the assured were, at the date of the insurance, the sole, absolute and unconditional owners of the property insured. If not so, the policy is declared to be void. The proofs and admission of the plaintiff show that, at the date when the insurance was effected, the plaintiffs had no legal title to the property insured, but held it under a contract of sale. The contract was executed by the National State Bank of Elizabeth, N. J., as party of the first part, dated September 10, 1881, and thereby the bank agreed to sell and convey the premises to the plaintiff, George C. Carpenter, on or before the 6th day of December, 1882. On the contract was indorsed an .assignment by George C. Carpenter to the plaintiff Henry M. Carpenter of " an undivided one-half part of the premises." There was also evidence tending to show, and the jury, by a special verdict, found the fact to be, that the plaintiffs, at or before the time of the issuance of the policy to them, informed the agent of the defendant, who countersigned and issued the policy, " that they held the mill .and premises on which it was situated by contract for purchase, and not by deed."

We do not understand the defendant to question here the propo-.sition maintained by counsel for the plaintiffs, and upon which the court directed a general verdict for the plaintiffs, that the notice found by the jury to have been given to the agent at the time of issuing the policy, was notice to the defendant ; and that the defend-.ant is chargeable with knowledge of the facts thus communicated to

the agent, so far as they were facts, to the same effect as if those facts had been stated in the contract itself.    But there is the further question here, whether that statement represented the actual facts of the case.    If not, it had no effect to relieve the plaintiffs from the express condition of the contract, to the effect that they were the sole, absolute and unconditional owners of the property insured ; and. upon that question the burden of proof was clearly on the plaintiffs. By their contract with the defendant, the. plaintiffs have expressly consented to the condition that if they were not, at the date of the. contract, the sole, absolute and unconditional owners of the property, the policy should be void.    It is conceded that this condition was not fulfilled ; the plaintiffs seek to avoid the condition by proof that the insurer was informed, at the time of making the contract, that they were not the sole, absolute and unconditional owners of the. property, but held an equitable title thereto by virtue of a contract. of purchase and sale.    The theory of the plaintiff's case, in this. respect, is that the defendant was estopped from insisting upon the violated condition because it contracted in view of the *actual* facts of the case, which were communicated to its agent at the time of the contract.    Clearly, in order to avail themselves of the estoppel, it was necessary for the plaintiffs to prove both the fact of the com_ munication to the defendant's agent and the truth of the fact communicated.    This they have failed to do.    The evidence is that the plaintiffs had a contract from the Bank of Elizabeth, but that the title of the property was in one John Kean.    There is a suggestion that Kean was the president of the bank, and that he held the title in trust for the latter, but there is no evidence to that effect, and, so far as the evidence goes, it negatives the proposition that the vendor in the plaintiff's contract of purchase had any title to convey.

The plaintiffs have, therefore, failed to show that at the time of the issuance of the policy they held an equitable title by virtue of a contract of sale from the owner of the property, as, in substance, they allege and the jury have found, they informed the defendant's agent.    We must consider the plaintiffs as having failed to make a case in the respect last considered, and that the defendant was entitled to a direction of a verdict in its favor on the first and. second grounds stated in its motion to that effect.

The judgment and order appealed from should be reversed and a new trial granted.

BARKER, P. J., and MACOMBER, J., concurred.

Judgment and order reversed and new trial granted with costs to abide the event.